ELECTRIC MOTOR & REPAIR COMPANY, INC., v. MORRIS & ASSOCIATES, INC.

No. 68SC183

(Filed 14 August 1968)

**1. Trial § 56— waiver of jury trial — function of court**

The waiver of trial by jury invests the court with the dual capacity of judge and juror, and it is in the judge's province to determine the credibility of the witnesses, the weight to be attached to their testimony, and the inferences legitimately to be drawn therefrom.

**2. Trial § 56— trial without a jury — function of court**

Where jury trial is waived, the trial judge must consider and weigh all the competent evidence before him, giving it such probative value to which in his sound discretion and opinion it is entitled.

**3. Trial § 56— trial without a jury — court's duty to draw inferences from the evidence**

Where different inferences can be drawn from the evidence in a trial by a judge without a jury, the determination of which reasonable inferences shall be drawn is for the judge.

**4. Sales § 13— counterclaim for goods sold and delivered — trial without a jury — sufficiency of evidence to support findings of fact**

In an action for goods sold and delivered, defendant counterclaimed for goods allegedly sold and delivered to plaintiff corporation, alleging that defendant and the president of plaintiff corporation, acting in his individual capacity, entered into a written contract whereby they purchased certain air conditioning equipment as a joint venture, that the air conditioning equipment was delivered, together with certain electrical equipment, to defendant's premises by plaintiff's truck, that the air conditioning equipment was sold, that the amount remitted to plaintiff's president included payment for the remaining electrical equipment, that plaintiff's president agreed that plaintiff corporation would purchase the remaining equipment from defendant for $1800, and that defendant sent an invoice to plaintiff for the equipment, which plaintiff has refused to pay. *Held:* The evidence is sufficient to support the court's findings of fact that (1) the written agreement between defendant and plaintiff's president concerned only the air conditioning equipment and that defendant paid only for such equipment, (2) the equipment defendant alleges it sold to plain-

tiff was not owned by defendant but was owned by plaintiff, (3) plaintiff's president was not authorized to instruct defendant to submit an invoice to plaintiff and plaintiff did not receive any property from defendant to support its invoice, and (4) defendant knew or should have known that plaintiff's president was acting against the interest of plaintiff in the transaction; accordingly, the court's conclusion that plaintiff was not indebted to defendant is supported by the findings of fact based upon competent evidence.

APPEAL by defendant from *Hobgood, J.,* Second January 1968 Regular Civil Session of WAKE Superior Court.

In its complaint, plaintiff alleges that defendant is indebted to it in the sum of $1,866.13 for various articles of equipment, merchandise, and services sold and delivered by plaintiff to the defendant.

In its answer, defendant admits that it is indebted to plaintiff for said merchandise and services in the sum of $1800.00. In a further answer, defense and counterclaim, defendant alleges that it is entitled to a setoff in the amount of $1800.00 due defendant by reason of certain transactions between W. S. Ward (hereinafter called Ward) and defendant, the said Ward being the president of and a major shareholder in plaintiff corporation during 1966 and up until his death in November, 1966.

Specifically, defendant alleges that it and Ward, acting in his individual capacity, entered into a written contract on 6 June 1966 whereby Ward agreed to purchase certain used air-conditioning equipment from a demolishing company in New York and arrange for said equipment to be delivered to defendant's premises in Raleigh, after which it would be resold and any profits divided between Ward and defendant. The contract, written in longhand by Ward, listed with appropriate description two Carrier compressors, three motors, and "one lot valves." Defendant further alleges that Ward arranged for plaintiff's tractor-trailer truck to deliver the air-conditioning equipment, together with certain electrical equipment, from New York to defendant's premises in Raleigh; that, thereafter, Ward and defendant agreed to sell the air-conditioning equipment to Decker & Reynolds in Hickory, N. C., for $12,000.00 and Ward agreed that plaintiff would purchase the remainder of the equipment for $1800.00. The air-conditioning equipment was delivered to Decker & Reynolds; defendant received payment therefor, and on 10 August 1966, made its check to W. S. Ward for $12,000.00. On 3 August 1966, defendant made its invoice to Decker & Reynolds for the two Carrier compressors, three motors, and "one lot valves" in substantially the same words and figures as set forth in the contract

between Ward and defendant. On 3 August 1966, defendant also made out an invoice to plaintiff for "motors, starters, switches, etc." for $1800.00, which plaintiff refused to pay. Defendant alleges that plaintiff is indebted to defendant in said amount.

By agreement of the parties, jury trial was waived and Judge Hobgood heard the evidence, found the facts, and entered judgment, summarized as follows:

## FINDINGS OF FACT

1. The written agreement between defendant and Ward concerned air-conditioning equipment, which was all the property covered by their joint venture and that defendant paid Ward only for articles described in Ward's invoice (defendant's Exhibit 5) and nothing else.

2. That the merchandise defendant alleges it sold to plaintiff was not owned by defendant but was owned by plaintiff.

3. Ward was not authorized to instruct defendant to submit an invoice to plaintiff and plaintiff did not receive any property from defendant to support its invoice.

4. Defendant knew or should have known Ward was acting against the interest of plaintiff in the transactions.

## CONCLUSIONS OF LAW

1. Ward's actions were not authorized by plaintiff and were not binding on plaintiff.

2. Defendant knew or should have known Ward was acting against the interest of plaintiff.

3. That plaintiff recover $1800.00 plus interest and costs from the defendant.

Defendant made exceptions to the findings of fact and conclusions of law and appealed.

*Manning, Fulton & Skinner, Attorneys for plaintiff appellee.*

*Purrington, Joslin, Culbertson & Sedberry, by Charles H. Sedberry, Attorneys for defendant appellant.*

BRITT, J.

[1, 2]   The waiver of trial by jury invested Judge Hobgood with the dual capacity of judge and juror. *Reid v. Johnston,* 241 N.C. 201,

85 S.E. 2d 114. Consequently, it was in Judge Hobgood's province to determine the credibility of the witnesses and the weight to be attached to their testimony, and the inferences legitimately to be drawn therefrom, in exactly the same sense that a jury would do in the trial of a case. It was Judge Hobgood's right and duty to consider and weigh all the competent evidence before him, giving to it such probative value as in his sound discretion and opinion it was entitled to be given. *Trust Co. v. Lumber Co.,* 221 N.C. 89, 19 S.E. 2d 138; 89 C.J.S., Trial, § 593; 53 Am. Jur., Trial, § 1123.

[3] When a trial by jury is waived, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge. *Turnage Co. v. Morton,* 240 N.C. 94, 81 S.E. 2d 135.

In *Main Realty Co. v. Blackstone Valley Gas & E. Co.,* 59 R.I. 29, 193 A. 879, 112 A.L.R. 744, the court said: "In reaching his conclusions, the trial justice had the benefit of seeing and hearing the witnesses. He also was entitled to consider all the evidence and to draw therefrom such inferences as were reasonable and proper under the circumstances, even though another different inference, equally reasonable, might also be drawn therefrom."

[4] The first assignments of error brought forward in defendant's brief relate to finding of facts No. 7 and conclusions of law No. 2 which are as follows:

"7. That W. S. Ward's instruction to the defendant to submit to plaintiff the invoice identified as defendant's Exhibit 3 was not authorized by plaintiff corporation, and that plaintiff corporation did not receive any property or other consideration from the defendant corporation to support said invoice.

\*          \*          \*

"2. That in the transactions involved, W. S. Ward was acting for his personal interest, and that his actions were not authorized by plaintiff corporation and were not binding on plaintiff corporation."

Defendant contends that his assignments of error relating to the foregoing finding and conclusion pose the question: "Did W. S. Ward have authority to make a contract on behalf of plaintiff corporation for purchase of electrical materials from defendant?" We do not agree that this is the question raised by the assignments of error.

Plaintiff did not contend that in proper instances Ward did not have authority to purchase electrical equipment and transact other

business in the name and on behalf of the plaintiff. But, plaintiff strenuously contended that in the particular transaction set forth in defendant's answer, Ward was acting at all times in his individual capacity, with the full knowledge of defendant, and that under those circumstances plaintiff was not bound by any part of the transaction beneficial to Ward or defendant and detrimental to plaintiff.

Our only responsibility on this appeal is to determine if the conclusions of law made by Judge Hobgood are supported by findings of fact based upon competent evidence.

The burden of proof in the trial of this action was on defendant, and oral and documentary testimony was introduced by defendant and plaintiff. It is elementary that Judge Hobgood could believe all of the testimony, none of the testimony, or such portions as he saw fit.

Finding of fact No. 7 is supported by competent evidence. Edward Pearce, vice-president of plaintiff from 1965 to 1967, testified without objection that Ward told him that the $1800.00 invoice was a "side deal" between him and defendant and there was not any equipment to support the invoice. The written contract between Ward and defendant listed only the equipment which was sold to Decker & Reynolds. All other testimony regarding the purpose of the $1800.00 invoice was oral, and Judge Hobgood was the "trier of the facts." Finding of fact No. 7 was supported by the evidence, and conclusion of law No. 2 was supported by the findings of fact.

**[4]**     Defendant's next assignments of error relate to finding of fact No. 4 which is as follows:

> "4. That the merchandise which the defendant alleges it sold to plaintiff under its invoice identified as defendant's Exhibit 3 was never in fact owned by defendant, but was merchandise off-loaded at defendant's business site from trucks owned by the plaintiff and was in fact property which plaintiff had purchased and paid for from the site of the New York World's Fair."

Defendant contends that there is no competent evidence to support this finding of fact. We disagree. Several witnesses testified that during 1966, Ward, on behalf of plaintiff, purchased large quantities of electrical equipment at the old World's Fair site in New York and removed the same to Raleigh. There was also evidence that the refrigeration equipment embraced in the agreement between Ward and defendant was purchased from a firm demolishing the New Western Hotel in New York City. Thomas A. LaFerire, witness for plaintiff, testified that he was a truck driver for plaintiff in 1966

and was the only driver of the plaintiff's tractor-trailer; that in 1966 he picked up some electrical equipment at the World's Fair site and then picked up a large portion of the refrigeration equipment at the New Western Hotel site; that he delivered all of said equipment picked up at both sites to defendant's premises in Raleigh. He testified that he made a second trip to New York, getting a few items at the World's Fair site and picking up the balance of the refrigeration equipment at the hotel site and that the entire load was delivered to defendant's premises in Raleigh.

In his testimony, Edward Pearce (identified above) testified that the air-conditioning equipment was purchased from the hotel site in New York while the electrical equipment was purchased from the World's Fair and that plaintiff paid for the equipment purchased from the World's Fair. The testimony showed that certain electrical equipment was removed from defendant's premises in Raleigh to plaintiff's premises, but the evidence was very conflicting as to the quantity of said equipment; Pearce testified that the small quantity of electrical equipment which plaintiff received from defendant "looked like" the same equipment which the plaintiff had purchased from the World's Fair. Again, Judge Hobgood was the trier of the facts and there was testimony sufficient to support his findings.

**[4]** Defendant's next assignment of error relates to finding of fact No. 5 which is as follows:

"5. That defendant by submitting its invoice identified as defendant's Exhibit 3 to plaintiff was attempting to collect from plaintiff the profit on its joint venture with W. S. Ward personally."

Finding of fact No. 5 was amply supported by the evidence, particularly the testimony of Edward Pearce.

**[4]** Defendant contends that there is not competent evidence to support the court's findings of fact that the contract between Ward and defendant described all the property covered by the joint venture between defendant and Ward. Again, Judge Hobgood had the authority to believe all, any, or none of the testimony. The record contains ample evidence to support these findings.

**[4]** Finally, defendant contends that there was competent evidence to support the court's finding of fact that defendant knew or should have known that Ward was acting in his personal interest and against the interest of plaintiff corporation in the transactions described in the pleadings. This contention is completely without merit as the very basis for defendant's counterclaim was a contract allegedly

entered into between Ward, individually, and defendant. From the beginning, defendant knew that it was dealing with Ward as an individual and not with plaintiff corporation. The evidence was more than sufficient to support Judge Hobgood's findings.

We have carefully considered each of defendant's assignments of error and we find no merit in them. They are, therefore, overruled.

The judgment of the Superior Court is

Affirmed.

CAMPBELL and MORRIS, JJ., concur.